IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LINDA FAY BUSH,                      )
                                     )
            Plaintiff,               )
                                     )
     v.                              )    1:17CV872
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
            Defendant.               )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Linda Fay Bush ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 8, 2012, alleging a disability onset date of October 26, 2011 in both applications. (Tr. at 14, 219-34.)[1] Her applications were denied initially (Tr. at 94-113) and upon reconsideration (Tr. at 114-47, 162-77). Thereafter, Plaintiff

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 178-80.) On July 12, 2016, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 14.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and, on August 1, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 16.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease (DDD); osteoarthritis (OA); and carpal tunnel syndrome[.]

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work with further limitations. Specifically, the ALJ found that Plaintiff

> can stand and walk up to 2 hours; and sit up to 6 hours. She can occasionally handle, finger, and feel with the right upper extremity; occasionally climb ramps

5

or stairs, balance, stoop, kneel, or couch; never climb ladders, ropes, or scaffolds; never crawl; and never have exposure to unprotected heights.

(Tr. at 18.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 23.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 24-25.)

Plaintiff now argues that substantial evidence fails to support the above RFC "because the ALJ failed to follow the treating physician rule and give more weight to Plaintiff's treating physician[, Dr. Fred D. McQueen,] over the non-examining state agency medical consultant." (Pl.'s Br. [Doc. #12] at 3.) In a related argument, Plaintiff further contends that the ALJ's failure to include Dr. McQueen's opined limitations in the RFC "necessarily renders the Step 5 determination unsupported by substantial evidence." (Id. at 11.) After a careful review of the record, the Court finds no basis for remand.

A. Treating Physician Opinions

Plaintiff first challenges the ALJ's failure to assign controlling weight to Dr. McQueen's medical opinions in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

6

20 C.F.R. §§ 404.1527(c) and 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[4]

---

[4] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical

7

In the present case, Dr. McQueen issued multiple opinions regarding Plaintiff's limitations during the relevant time period. In a letter dated November 8, 2012, he "advised [Plaintiff] against prolonged standing, sitting or walking." He further advised her "to avoid climbing stairs, bending, stooping, crawling . . . walking on uneven ground . . . extreme temperatures; rapid, repetitive motion of the lower extremities and unprotected heights." (Tr. at 356.) A similar letter issued February 6, 2013 advised no "lifting, pulling, or pushing, no climbing up and down steps, no overhead reaching." (Tr. at 332.)

Dr. McQueen also completed two, two-page RFC questionnaires supplied by Plaintiff's attorney. In the first of these, completed on July 7, 2014, Dr. McQueen indicated with circles or checkmarks that Plaintiff could sit, stand, and walk for only ten minutes at a time, would require frequent breaks of 30 minutes to one hour during an 8-hour workday, could never lift any amount of weight or use her right upper extremity in a work situation, and would miss more than four days of work per month as a result of her impairments. (Tr. at 348-49.) On June 21, 2016, Dr. McQueen completed a second form questionnaire in which he opined that Plaintiff could never sit, stand, walk, lift, carry, or use her upper extremities for any amount of time in an 8-hour workday. (Tr. at 461-62.)

The ALJ set out Dr. McQueen's opinions in detail, but ultimately assigned them only partial weight. In doing so, the ALJ explained as follows:

> I recognize Dr. McQueen has a lengthy treating relationship with [Plaintiff.] However, the course of treatment pursued by the doctor has not been consistent with what one would expect if [Plaintiff] were truly disabled, as the doctor reported. Also, the doctor's opinions are mostly too restrictive and

---

sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

appear to contain inconsistencies compared to the objective findings of record in addition to [Plaintiff's] testimony (i.e., never left/carry any amount of weight; never use hands, fingers, or arms; never sit, stand, or walk in an 8-hour day). Furthermore, the final responsibility for deciding whether [Plaintiff] is "disabled" under the Act is reserved to the Commissioner of Social Security.

(Tr. at 21.) Thus, the ALJ provided four bases for declining to give controlling weight to Dr. McQueen's opinions: (1) the opinions were not consistent with the conservative course of treatment; (2) the opinions were not consistent with the objective evidence; (3) the extreme limitations posed by Dr. McQueen were not consistent even with Plaintiff's own testimony; and (4) the ultimate determination of disability is reserved for the Commissioner.[5] The ALJ's opinion includes further detailed findings as to each of these rationales.

First, the ALJ noted that "the course of treatment pursued by the doctor has not been consistent with what one would expect if [Plaintiff] were truly disabled." (Tr. at 21.) Specifically, "the treatment received has only been conservative in nature, which has allowed [Plaintiff] to remain active." (Tr. at 20.) In this regard, the ALJ noted that, "[a]lthough physical examinations periodically revealed some positive findings, they were otherwise normal with

---

[5] The Court also notes that where, as with Dr. McQueen's RFC questionnaires, an opinion consists of a minimally-completed checkbox form, the ALJ may reasonably conclude that it is of limited probative value. See Coleman v. Colvin, No. 1:15CV751, 2016 WL 4223583, at *6 (M.D.N.C. Aug. 9, 2016), report and recommendation adopted, No. 1:15CV751, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016) (finding that the ALJ properly assigned no weight to a nurse practitioner's opinions where she provided "little-to-no explanation of the evidence used to form her opinions, which [we]re set forth either in short and conclusory letters or in a check box form, and the record lack[ed] objective medical evidence in support of her conclusory assertions") (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")); see also McGlothlen v. Astrue, No. 7:11-cv-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) (finding a form questionnaire "entitled to little weight" due to lack of explanation); Bishop v. Astrue, No. 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) (same). Here, Dr. McQueen provided only a limited objective basis for his check box opinion. In fact, Dr. McQueen provided no basis for his opinions beyond Plaintiff's diagnoses -consisting of chronic pain, osteoarthritis, and degenerative cervical and intervertebral disc disease - and drowsiness from her medications.

conservative treatment alone (*i.e.*, narcotic medication, physical therapy, bracing/splints)."
(Tr. at 20.)

In addition, as the ALJ correctly notes, the extreme limitations opined by Dr. McQueen are inconsistent with the objective medical findings, including those in Dr. McQueen's own treatment notes. As the ALJ documented at length earlier in the record,

> [e]xaminations mainly revealed no acute distress; normal ambulation, gait, station, balance, and heel/toe walking; normal sensation, strength, and tone; no contractures, malalignment, or bony abnormalities of the joints, bones, or muscles; and normal extremities without cyanosis, edema, varicosities, or palpable cord. She had normal range of motion without pain of the lumbar and cervical spines, shoulder joints, hips, knees, and toes; no spasms of the paraspinal muscles; negative Human's [sic] signs; as well as negative Patrick-Fabere tests. The knees particularly had full range of motion without tenderness or swelling; anterior/posterior drawer and medial/lateral testing showed no instability; patella grind and quad apprehension tests were negative; and straight leg raise as well as crossed straight leg raise were negative. [Plaintiff] had grossly intact cranial nerves and monofilament tests; intact deep tendon reflexes; intact finger-to-nose; and no tremors.

(Tr. at 20.) The ALJ also noted that allegations of disabling symptoms were not supported by the objective medical findings in light of the radiological findings, which revealed "no more than mild to moderate findings." (Tr. at 19.)

> Foremost, radiological testing demonstrated normal findings of the bilateral lower extremities, right knee, right shoulder, and hips. Images of the lumbar spine showed broad-based disc bulge at L5-S1 with small left paracentral disc protrusion; moderate left and mild right neural foraminal narrowing and L5-S1; and mild broad-based disc bulge at T11-T12, T12-L1, and L3-L4. Cervical spine images revealed a small central disc protrusion at C3-C4 abutting the spinal cord; mild broad-based disc bulges at C5-C6 and C6-C7; and Chiari I malformation. In addition, the thoracic spine showed intermediate bone lesion within the T5 vertebral body (suggestive of an atypical hemangioma); normal thoracic spinal cord; and no significant central canal nor neural foraminal narrowing.

(Tr. at 19-20.)

Finally, the ALJ noted that Dr. McQueen's opinions were inconsistent with Plaintiff's own testimony. (Tr. at 20, 21.) In this regard, the ALJ had already found that based on her testimony and Disability Reports, Plaintiff "is able to perform household chores; care for her family; prepare meals; perform personal care, independently; drive a car; [] watch television . . . . spend[] time with others; see[]her mother and brother daily; attend[] church . . . . go out alone, . . .[and] shop in stores." (Tr. at 17.) In addition, the ALJ noted Plaintiff's testimony that "[s]he can lift about 10 pounds; walk 50 feet; sit 20-30 minutes; stand 15 minutes; and drive 45 minutes." (Tr. at 19.) As the ALJ explained, this testimony is inconsistent with Dr. McQueen's opinion that Plaintiff can *never* perform *any* of these activities in the course of an 8-hour workday. (Tr. at 21.) The ALJ concluded that Plaintiff's

> symptoms are not of the intensity, frequency, or severity to preclude the performance of sedentary exertional work. The fact that she may indeed have some ongoing or periodic discomfort was given due consideration in reaching the finding that [Plaintiff] could perform sedentary exertional work as described in the [RFC].

(Tr. at 21.) Notably, the RFC set forth by the ALJ is far more restrictive than that issued by the State agency medical consultant, who opined that Plaintiff remained capable of medium exertional work with the "ability to sit, stand, and walk up to 6 hours; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, or crawl; frequently handle, bilaterally; and unlimitedly balance with no other limitations." (Tr. at 22) (citing Tr. at 124-25). Although the ALJ accorded this opinion "considerable weight," finding that it was "consistent with the evidence at the time of the consultant's review" in March 2014, he further found that "the whole of the evidence at the hearing level supports [that Plaintiff] is more limited." (Tr. at 22.) The ALJ repeatedly noted that Plaintiff's back

condition had worsened over time, and that she experienced "ongoing and periodic discomfort" as the result of her impairments." (Tr. at 20, 22.) Therefore, he concluded that Plaintiff could not perform the medium work opined by both the State agency consultant in 2014 and the ALJ for Plaintiff's prior claim in 2007. (Tr. at 22.) He instead found her capable of a very limited range of sedentary work. The ALJ further explained, as set out above, that Dr. McQueen's treatment notes, and the medical evidence as a whole, support this finding.[6] Accordingly, the Court finds that substantial evidence supports the ALJ's RFC determination.

B.     Step Five

In her second, related argument, Plaintiff contends that, at step five of the sequential analysis, the ALJ's hypothetical question to the vocational expert was incomplete, as it "did not include the credited limitations opined by Dr. McQueen." (Pl.'s Br. at 11.) However, as explained above, substantial evidence supports the ALJ's decision to accord only partial weight to the extreme limitations opined by Dr. McQueen. As such, the ALJ properly omitted these limitations not only from the RFC, but also from the hypothetical question based upon it.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the

---

[6] As part of this determination, the ALJ noted that the medical source statement provided by Dr. James E. Rice in June 2013 supports the finding that Plaintiff "is capable of performing no more than sedentary work." (Tr. at 21.) Plaintiff contends that the ALJ's finding was in error, as "Dr. Rice opined *inter-alia* that Plaintiff would not be able to sit more than three hours in an eight-hour work day and would be limited to sitting no more than thirty minutes at a time, far short of the prolonged sitting required by the sedentary exertional level." (Pl.'s Br. at 10.) However, the ALJ discussed Dr. Rice's various proposed limitations and gave Dr. Rice's opinion only partial weight, discounting Dr. Rice's opinion to the extent that it was "not congruent with the whole of the evidence nor [Plaintiff's] testimony as discussed throughout this decision." (Tr. at 21.)

Commissioner [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge